Law Office of Allan Beiswenger
1101 West 7th Avenue
Anchorage, Alaska 99501
Office: (907) 868-1280
Fax: (907) 258-6419
Email: beiswenger@ak.net

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| Plaintiff, | ) | U.S.D.C. Case Number |
| | ) | 3:05-cr-0120 (RRB) |
| | ) | |
| vs. | ) | **MEMORANDUM OF LAW** |
| | ) | **IN SUPPORT OF** |
| DIANE MICHELLE TIMBERLAKE. | ) | **MOTION TO SUPPRESS** |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

**FACTUAL STATEMENT**

On July 1, 2005, at approximately 4:00 a.m, . Anchorage Police Officer Daniel Sturkie was on patrol in the area of Mirror Lake Park when he observed a blue 1995 Chevrolet Blazer in the corner of the boat ramp parking lot. The park has a sign posted indicating that it is closed from 11:00 p.m. to 6:00 a.m. daily. Officer Sturkie positioned his vehicle next to the driver's side of the Blazer and turned on his emergency lights. He then shined his spotlight on the vehicle. The officer observed a black male driver and a Native female in the front passenger's seat. He observed them hurriedly putting on their clothes.

The officer stepped outside of his patrol vehicle and the driver of the Blazer (the Black male) rolled down his window and the officer told him to stay where he was. The

1

driver began driving forward and the officer again told him to stop but the driver commented that he wasn't doing anything wrong, and with his headlights off, sped towards the exit from the park. The officer pursued the vehicle for a time but lost sight of it. See Attachment A.

During the contact the officer was able to see the license plate on the vehicle, AK # ELP 216, which was registered to the Defendant, Diane Timberlake. Apparently no effort was made by the police to locate Ms. Timberlake or the vehicle. On approximately August 1, 2005, , Ms. Timberlake was stopped for speeding by an Alaska State Trooper while driving north of Wasilla on the Parks Highway. Ms. Timberlake was told that there was a "locate" for her vehicle because of the Mirror Lake incident, but she was allowed to go by the Trooper.

On August 12, 2005, at approximately 3:47 p.m. Anchorage Police Officer Jack Carson responded to a report of a stolen vehicle, a 2000 green Dodge Ram pickup. Officer Carson saw the vehicle stopped at 8000 East 10th Ave. There were two people in the vehicle, and another male outside of the vehicle on the passenger side of the truck, talking to the two occupants. When the officer pulled up blocking the truck, the male that had been on the outside entered the passenger side of an adjacent vehicle, the 1995 Blue Blazer owned by Ms. Timberlake. Ms. Timberlake was in the driver's seat of the Blazer.

The officer initiated a felony stop on both vehicles, and waited until additional officers arrived before taking the four individuals into custody. Officer Carson gave dispatch the license plate number for the Blazer and was told that there was a "locate" for the vehicle, for an eluding. See Attachment B.

One of the officers to respond was Officer Eric Smith. He assisted with the felony stop of the two vehicles and the taking of the occupants into custody. When Officer Smith was having Ms. Timberlake and her passenger exit, he saw a marijuana pipe on the passenger side floorboard of the Blazer. After Ms. Timberlake and her passenger were secured in police vehicles, Officer Smith was advised by dispatch to impound the Blazer because of the eluding incident that had occurred over a month prior, and Officer Smith proceeded to do an inventory search at which time he observed several clear plastic baggies in the vehicle, and a prescription pill bottle in the center cup holder. See Attachment C.

Ms. Timberlake was released at the scene, and requested her purse from her vehicle. The officers refused to allow her to retrieve it. The vehicle was then impounded, at 4:10 p.m. August 12, 2005, , for "Eluding" and was towed to a secured storage yard. See Attachment D.

Ms. Timberlake's vehicle remained in impound, with no further action taken, until shortly before midnight on September 8, 2005, nearly one month later. At that time, Officer Smith applied for, and received, a search warrant for Ms. Timberlake's vehicle, Search Warrant No. 05.922 SW. Attachment E. A search of the vehicle, and of Ms. Timberlake's purse located therein, produced the evidence now being used against Ms. Timberlake.[1] See Attachment F.

**ARGUMENT**

The Fourth Amendment to the United States Constitution protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable

---

[1] During the initial search of the vehicle after obtaining the warrant, the officers observed a gun on the passenger side floorboard of the vehicle. Officer Smith again appeared before the magistrate to seek an amendment to the warrant for the gun. This weapon is the basis for Count II of the Indictment.

searches and seizures". The Supreme Court in *California v. Carney,* 471 U.S. 386, 412, 85 L.Ed.2d 406, 105 S.Ct. 2066(1985) described it as a "fundamental right" that ". . . is preserved by a requirement that searches be conducted pursuant to a warrant issued by an independent judicial officer."

Various exceptions to the warrant requirement have evolved throughout the years, including the "automobile exception" first established in *Carroll v. United States,* 267 U.S.132, 69 L.Ed. 543, 45 S.Ct. 280 (1925). While a warrant may not be required in all cases for purposes of searching vehicles, there still must exist "probable cause" to search, or to seize, the vehicle.

There are three separate searches, or seizures, that occurred in this case that violated Ms. Timberlake's constitutional rights. The first was the initial "seizure" of her vehicle by the police for the offense of "eluding" which had occurred more than a month before the vehicle's "seizure" on August 12, 2005. Secondly, the seizure of Ms. Timberlake's purse was unrelated to the offense of eluding, and constituted an unlawful "seizure". And finally, the impound and storage of the vehicle, with Ms. Timberlake's purse, for four weeks before a warrant was applied for, constituted an unreasonable seizure.

I.   Initial Seizure

There are certainly circumstances that may give rise to a "reasonable suspicion" that would authorize a temporary detention of a vehicle based upon the driver's response when stopped by police. For example, where a vehicle is stopped for a relatively minor traffic violation and the driver attempts to elude the police, Courts have held that the

4

driver's actions warranted a search of the vehicle. See for example *State v. Snow,* 179 Or. App. 222, 39 P.3d 909 (Or. 2002).

But in this case, the "suspicious activity" occurred nearly six weeks prior to the vehicle's seizure. If the driver of the vehicle on July 1, 2005, had something to hide from the officer (other than being undressed with a female in the vehicle within a closed park), it does not follow that anything that person had to "hide" would be present on August 12, 2005. Especially when the driver of the vehicle on July 1st was different from the driver on August 12th, 2005. The delay constituted a significant enough "interval" to obviate any sort of "probable cause" or even "reasonable suspicion".[2]

If the officers did have a reasonable basis to investigate the eluding incident, why didn't they attempt to contact Ms. Timberlake, the vehicle's registered owner? And why wasn't the vehicle impounded on August 1st, 2005, when Ms. Timberlake was stopped by State Troopers?

"The word 'automobile' is not a talisman in whose presence the Fourth Amendment fades away and disappears."[3] The various reasons given to justify the "automobile exception" to the Fourth Amendment have no application in this case, when the seizure of the vehicle was clearly pretextual. Thus, this Court should hold that the seizure of Ms. Timberlake's vehicle on August 12, 2005, was invalid.

II.    Seizure of Purse

Assuming, *arguendo*, that the seizure of the vehicle was allowed, it does not follow that the seizure of Ms. Timberlake's purse was authorized. Since Ms. Timberlake was not even present at the time of the eluding incident, her purse could not have contained

---

[2] *Id.,* 39 P.3d at 916, footnote 11.
[3] *Coolidge v. New Hampshire,* 403 U.S. 443, 461, 29 L.Ed. 2d 564, 580, 91 S.Ct.2022 (1971)

any sort of evidence relating to that charge. Thus, even if somehow there was probable cause to seize the vehicle for the eluding offense, this would not have extended to Ms. Timberlake's purse.

A woman's purse generally contains a variety of objects and documents, including keys, personal effects, credit cards, and a driver's license and other means of identification. It is a severe intrusion to be without it. A person has a greater expectation of privacy in a purse or other container, than in an automobile.[4] In *United States v. Place*[5], Justice O'Connor stated in her majority opinion:

> "The intrusion on possessory interests occasioned by a seizure of one's personal effects can vary both in its nature and extent. . . Given the fact that seizures of property can vary in intrusiveness, some brief detentions of personal effects may be so minimally intrusive of Fourth Amendment interests that strong countervailing governmental interests will justify a seizure based only on specific articulable facts that the property contains contraband or evidence of a crime.

The seizure of Ms. Timberlake's purse in this case was for twenty-nine days, hardly a "brief detention". If the officer had any sort of "probable cause" to search Ms. Timberlake's purse on August 12, 2006, he should have done so at that time. But by retaining custody of the purse for an extended period of time, depriving Ms. Timberlake of its possession, the "seizure" became unreasonable. Because of the lack of any basis to seize the purse as well as the unreasonable length of the seizure, any evidence obtained from the purse must be suppressed.

III.  Delay in Issuing Warrant

Though an initial seizure of a vehicle may be warranted, the seizure may become "unreasonable" if the vehicle is held for an extended period of time. As Justice White

---

[4] *United States v. Chadwick,* 433 U.S. 1, 13, 53 L.Ed.2d 538,  97 S.Ct 2476 (1977).
[5] 462 U.S. 696, 705, 77 L.Ed.2d 110, 119, 103 S. Ct. 2637 (1983).

stated in his dissenting opinion in *Coolidge v. New Hampshire*[6] referencing the Court's prior decision in *Chambers v. Maroney*[7]:

> "*Chambers* upheld the seizure and subsequent search of automobiles at the station house rather than requiring the police to search cars immediately at the places where they are found. But *Chambers* did not authorize indefinite detention of automobiles so seized; it contemplated some expedition in completing the searches so that automobiles could be released and returned to their owners."

More recently, in *United States v. John*[8], the Court stated, "We do not suggest that police officers may indefinitely retain possession of a vehicle and its contents before they complete a search."

For most people in our society, an automobile is a necessity. This is especially true in an area such as Anchorage where people depend on vehicles to a much greater extent than in other areas of the country. The distances involved and elements make alternative methods of travel unrealistic, and accessible and dependable mass-transit is available in only a few areas.

In this case, the vehicle itself was not being held as evidence of a crime, which may authorize a longer seizure than if it is being held for purposes of being searched. Any potential evidence was located within the vehicle, and if the seizure was lawful, arguably no warrant was required. See *Carroll v. United States*[9] and *United States v. Ross.*[10] There were apparently no reasons why the police could not have applied for a warrant to search the vehicle on a more expeditious basis.

---

[6] *supra,* 403 U.S. at 523, 29 L.Ed. 2d at 616.
[7] 399 U.S. 42, 26 L. Ed. 2d 419, 90 S.Ct. 1975 (1970)
[8] 469 U.S. 478, 487, 83 L.Ed.2d 890, 898, 105 S.Ct. 881 (1984).
[9] 267 U.S. 132, 69 L.Ed. 543, 45 S.Ct. 280 (1925).
[10] 456 U.S. 798, 72 L.Ed.2d 572, 102 S. Ct. 2157 (1982).

The circumstances of this case are unlike the situation in *United States v. Gastiaburo*[11] , where the Court found a 38 day delay between the impound and the search "minimal" as the search occurred on the same day that information establishing "probable cause" had been provided. The facts provided in support of the warrant in this case were based upon observations made, and information obtained, the night of the seizure, and so the vehicle was not held while any investigation continued.

Whether or not the initial "seizure" of Ms. Timberlake's vehicle and/or purse were initially justified (See Argument I, *infra*), holding them for twenty-eight days before seeking a warrant rendered the seizure unreasonable. Thus, any evidence obtained as a result of the subsequent warrant should be suppressed.

Dated at Anchorage, Alaska, this 20th day of March, 2006.

/s/Allan Beiswenger
Law Office of Allan Beiswenger
1101 West 7th Avenue
Anchorage, Alaska 99501
Office: (907) 868-1280
Fax: (907) 258-6419
Email: beiswenger@ak.net
Attorney for Defendant

CERTIFICATE OF SERVICE
This is to certify that a correct copy of this Memorandum
of Law In Support of Motion
to Suppress was served by electronic mail upon
The Office of the United States Attorney on the 20th day
of March, 2006.
/s/Allan Beiswenger

Allan Beiswenger
Attorney at Law
1101 W 7th Ave.
Anchorage, AK 99501
(907) 868-1280
Fax (907) 258-6419

---

[11] 16 F.3d 582 (4th Cir. 1994).