IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

UNITED STATES OF AMERICA )
)
Plaintiff, )
)
vs. ) Case No. 3:05-cr-0120-RRB
)
DIANE M. TIMBERLAKE )
)
Defendant. )
_____)

## DEFENDANT'S SENTENCING MEMORANDUM

Comes now the Defendant, Diane M. Timberlake, by and through her attorney, Allan Beiswenger, and files her sentencing memorandum and factors in consideration of her sentence.

Ms. Timberlake entered into a plea agreement with the United States. Ms. Timberlake entered a plea of guilty to Count 1 of the indictment against her, charging her with possession of cocaine base with the intent to deliver, in violation of 21 U.S.C. § 841 (a)(1) and (b)(1)(B). At the time of Ms. Timberlake's sentencing, the government will move to dismiss Count 2, charging possession of a firearm during a drug offense in violation of 18 U.S.C. § 924(c). Other terms of the plea agreement included the agreement of the United States Government not to file any additional charges, to recommend a guideline adjustment for acceptance of responsibility, and to recommend that the Court impose a sentence of sixty (60) months, the statutory minimum. Ms. Timberlake agreed not to seek any downward departures under the Sentencing Guidelines that would result in a sentence below the mandatory minimums,

Allan Beiswenger
Attorney at Law
1101 W 7th Ave.
Anchorage, AK 99501
(907) 868-1280
Fax (907) 258-6419

and she agreed to waive any appellate rights of her conviction, and of her sentence. Under the terms of the plea agreement, Ms. Timberlake is free to argue for a sentence below the guideline range in accordance with the sentencing factors set forth in 18 U.S.C. Sec. 3533(a).

The decision in *United States v. Booker,* 125 S.Ct. 735(2005) holds that the Federal Sentencing Guidelines are advisory. In the recent Ninth Circuit Court of Appeals decision in *Zavala v. United States*[1] the court held that District Courts may consider the guideline range as a "starting point" but that they should not be accorded undue weight. District Courts ". . . must properly use the Guideline calculation as advisory and start there, but they must not accord it greater weight than they accord the other Sec. 3553(a) factors. Rather, they must consider all of the information before them, as they used to do, and then reach for the correct sentence under all the circumstances."[2]

The relevant factors set forth in 18 U.S.C. § 3553(a) for sentencing are:

    A.    Factors to be considered in imposing a sentence. The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider – –

    1.    the nature and circumstances of the offense and the history and characteristics of the defendant;

    2.    the need for the sentence imposed –

    a.    to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

---

[1] 443 F.3d 1165, 1171 (9th Cir. 2006)
[2] *Id.*

        b.    to afford adequate deterrence to criminal conduct;

        c.    to protect the public from further crimes of the defendant; and

        d.    to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

3. the kinds of sentences available;

4. the kinds of sentence and the sentencing range established for – –

        a.    the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines – –

        i    issued by the Sentencing Commission pursuant to <u>section 994(a)(1) of title 28, United States Code</u>, subject to any amendments made to such guidelines by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and

        ii    that, except as provided in section 3742(g) [<u>18 USCS § 3742(g)</u>], are in effect on the date the defendant is sentenced; or

        b.    in the case of a violation of probation or supervised release, the applicable guidelines or policy statements issued by the Sentencing Commission pursuant to <u>section 994(a) (3) of title 28, United States Code</u>, taking into account any amendments made to such guidelines or policy statements by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28);

5. any pertinent policy statement – –

        a.    issued by the Sentencing Commission pursuant to <u>section 994(a) (2) of title 28, United States Code</u>, subject to any amendments made to such policy statement by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and

        b.    that, except as provided in section 3742(g) [<u>18 USCS § 3742(g)</u>], is in effect on the date the defendant is sentenced.

6. the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

7. the need to provide restitution to any victims of the offense.

See also *Booker,* 125 S.Ct. at 764.

The various factors provide a common sense approach to protect society, reaffirm societal norms, provide treatment for a defendant, and bring respect for the process.

As is detailed in the presentence report, Ms. Timberlake has had a miserable existence. She was raped by her biological brother at the age of eleven (11) while both were in foster care. She was in two horribly abusive relationships that resulted in injuries to Ms. Timberlake too numerous to count. It is small wonder that she turned to drugs, specifically crack cocaine, to "escape" her existence. Ms. Timberlake has been addicted to drugs for the majority of her life, and her current offense reflects that addiction, as any sales, or possession with intent to sell, were solely to finance Ms. Timberlake's personal drug use. Imposition of the statutory minimum sentence of sixty (60) months is more than sufficient to meet the various considerations for purposes of sentencing.

**ARGUMENT**

1. Guideline Range

Ms. Timberlake contests the applicable Guideline calculation as set forth in the Presentence Report. Specifically, she objects to the "quantity" of drugs attributed to her, as well as any upward adjustment for possession of a firearm.

Ms. Timberlake pled guilty to the indictment, charging her with possession with intent to distribute a mixture containing a total of 12.3 grams of cocaine base on September 9, 2005, when the drugs were found in Ms. Timberlake's purse. The presentence report attributes additional quantities of cocaine base to her, including sales in October and November of 2004, and January of 2005 (an additional 8 grams). Ms. Timberlake has not admitted these sales and objects to the inclusion of the additional drugs in calculating her Base Level Offense.

The presentence report also includes an additional 16.2 grams of cocaine base based upon a conversion of funds found in her apartment, under the armrest of a couch, into the quantity of drugs allegedly sold to produce the funds. As indicated in the objections to the presentence report, Ms. Timberlake has not admitted that the funds were hers, or that the funds were the result of drug sales. Thus, the additional 16.2 grams should likewise not be included.

Even if the funds ($1,886) did represent money from the sale of drugs, the "conversion" ratio used by the probation officer is incorrect. As can be seen in paragraph 27 of the Presentence Report, the conversion is based upon $116.67 paid per gram of cocaine base. In a footnote, it is explained that this was the approximate price previously charged by Ms. Timberlake for cocaine base. But according to the information in the presentence report, paragraphs 10-14 (which again, are not being admitted by Ms. Timberlake), on October 5, 2004; November 3, 2004; November 9, 2004; and January 13, 2005; Ms. Timberlake sold a total of 7.8 grams of cocaine base for a total of $1,650.00. This would average $211.54 per gram, not the $116.67 used

by the probation officer. Converting $1,886 into "drugs" at $211.54 per gram would result in an amount of 8.91 grams.

The base level offense for the conduct that Ms. Timberlake is admitting would result in an offense level of 26. Even if the alleged drug sales are included, and the money-to-drug conversion is used, the total amount would be 29.21 grams of cocaine base for an offense level of 28. See U.S.S.G. Sec. 2D1.1(c)(6).

Ms. Timberlake also objects to any increase based upon possession of a firearm. U.S.S.G. Sec. 2D1.1(b)(1). For the reasons set forth in Ms. Timberlake's Objections to the Presentence Report, Ms. Timberlake would deny possession of either of the firearms. The gun found in her vehicle was located under the front passenger seat, which was occupied by a Mr. Ledbetter. There were no fingerprints or DNA connecting Ms. Timberlake to the weapon, and there was no evidence to suggest that she even knew that it was present. Similarly, the gun found in her apartment on October 3, 2005, was found in a blue canvas bag on the floor of the living room. There is nothing to establish that Ms. Timberlake owned or possessed the bag, nor the gun, or that she even knew the gun was present. As the cases cited in the objections make clear, proximity is not sufficient to establish possession.

It is Ms. Timberlake's position that the base level offense would be 26, not including any additional drugs, or 28 if the Court does include the additional drugs, and the drug-equivalent for the funds. Ms. Timberlake is entitled to a three level reduction for acceptance of responsibility, resulting in a total offense level of 23, or 25.

Ms. Timberlake would agree that her criminal history points would total three, and that her criminal history category would be II. The guideline imprisonment range would therefore be either 51-63 months, or 63-78 months.

2.     Nature and Circumstances of the Offense

Ms. Timberlake has been addicted to drugs for most of her adult life. She has supported her habit by dancing at strip clubs, prostitution, and selling drugs. She has never been a major "distributor" of drugs, and her financial circumstances clearly demonstrate that she pretty much used any sort of money that she may have made to buy drugs for her personal use.

This court should consider the fact that Ms. Timberlake was at the low end of any dealing, and that she is primarily a drug addict, and only secondarily a dealer. See *United States v. Williams,* 78 F. Supp. 2nd 189, 193 (S.D.N.Y. 1999) and *United States v. Webb,* 966 F. Supp. 16 (D.D.C. 1997), reversed at 134 F.3d 403 (D.C. 1998).

The Court should also consider that the guideline range unfairly attributes much harsher penalties to cocaine base (crack) than powder cocaine. The ratio is essentially 100 to 1. Post-*Booker,* the "unreasonable inflation" of sentences in crack cocaine cases can be considered under Sec. 3553(a), for purposes of sentencing below the guideline range, and a 20 to 1 ratio has been approved, and is consistent with the Sentencing Commission's most recent recommendations. See *United States v. Beamon,* 373 F. Supp 2d 878, 887 (E.D. Wisc, 2005), and *United States v. Smith,* 359 F. Supp. 2d 771, 782 (E.D. Wisc. 2005).

3. The Characteristics of the Offender

Ms. Timberlake is currently 51 years of age, and virtually all of her legal problems have been related to her personal drug use, either efforts to obtain funds to pay for drugs through prostitution or theft, or sales of small quantities of drugs to provide sufficient quantities for her own use.

Ms. Timberlake had a tortuous childhood, and this has continued throughout her adult life.  The one "positive" aspect in her life has been her children, with whom she has maintained a close relationship despite the dysfunctional lifestyle of an addict.

Ms. Timberlake was in two long-term relationships, both of them extremely violent.  Ms. Timberlake has been the victim of domestic violence by the men in her life for nearly thirty years.  She has had a number of her bones broken, her teeth knocked out, and her lungs collapsed, as a result of beatings by her partners.  She has been forced into seclusion and has moved a number of times to try and escape these partners.

Ms. Timberlake is not a "bad" individual.  She is a sympathetic one who has turned to drugs to help her deal with the adversity and problems that she has faced, and turned to selling drugs to help her obtain them.

Though Ms. Timberlake may not qualify for a "substantial assistance" departure under U.S.S.G. Sec. 5K1.1, her willingness to assist the Government can be considered under 18 U.S.C. § 3553(a)(1). Ms. Timberlake agreed to provide assistance to the government, but during her initial "debriefing", her

attorney discovered that she had a conflict, and the debriefing was stopped. By the time Ms. Timberlake was appointed a new attorney, and issues relating to a suppression motion had been addressed, the government no longer believed that any of Ms. Timberlake's information was "current" enough to be of any value. But Ms. Timberlake was more than willing to assist the government.

4. Rehabilitation

An important 3553(a)(1) factor in considering an appropriate sentence for Ms. Timberlake is her rehabilitation. Ms. Timberlake is hopeful of entering a drug rehabilitation program during her period of incarceration. She has been addicted to drugs for several decades. Her abstinence from drugs during her incarceration will provide her with an opportunity to get "clean" and hopefully think more clearly, but certainly the education and training provided by a drug rehabilitation program will assist.

Ms. Timberlake intends to participate in any drug rehabilitation programs that may be available to her. Unless the Court finds that she was in possession of one of the guns that were found, Ms. Timberlake will have an even greater incentive to successfully complete a drug program during her incarceration given the opportunity offered by 28 C.F.R. § 550.58 for a possible one year reduction of her sentence. A finding that she possessed a firearm would preclude an early release. See 28 C.F.R. § 550.58(a)(vi)(B).

5.  Deterrence

For an addict like Ms. Timberlake there is little deterrent effect of a prison sentence.  Ms. Timberlake, and most of the individuals that are addicted to drugs, have little understanding of the possible consequences of drug sales, and what understanding they do have is overshadowed by the need and desire to obtain more drugs.

And for people that are not addicts, the five-year mandatory minimum sentence is sufficient to deter any propensity to engage in drug sales.  It is nonsensical to suggest that someone won't be deterred by a five year sentence, but may be deterred by a seven or eight year sentence.

**CONCLUSION**

Ms. Timberlake would likely not have lived much longer had she not been charged with the current offense.  Not only did she face the nearly constant risks associated with being involved with the use and sale of drugs, but her age makes her far more vulnerable to the physical consequences of drug use.  She now will have the opportunity to reshape how she intends to live, and has a choice of being available to her children, and grandchildren, or of wasting what remains of her life.

Ms. Timberlake has indicated why she does not believe that the Presentence Report is correct in establishing her offense level.  If her offense level is based upon the conduct that she has been convicted of, and has admitted, the mandatory minimum sentence of sixty (60) months would be towards the upper end of the applicable guideline range.  But even if the Court attributes a larger quantity of

drugs to Ms. Timberlake than what she has admitted, consideration of the various 3553(a) factors would warrant a departure below the applicable guideline range, to the minimum of sixty months.

Both the government, and Ms. Timberlake, are requesting that the Court impose the mandatory minimum sentence. While Ms. Timberlake recognizes that this is not binding on the Court, the Court should also consider that by entering into the plea agreement, Ms. Timberlake has waived her right to appeal the denial of her Motion to Suppress, which she continues to believe had substantial merit, thereby avoiding a trial and an appeal.

It is respectfully requested that the Court impose the recommended sentence of sixty months, and that the court recommend placement in a facility that offers a drug rehabilitation program.

DATED: July 14, 2006

LAW OFFICES OF
ALLAN BEISWENGER
Attorney for Petitioner

s/ Allan Beiswenger
1101 W 7th Avenue
Anchorage, AK  99501
Phone: (907) 868-1280
Fax: (907) 258-6419
E-mail: beiswenger@ak.net
Alaska Bar No. 7706074

**CERTIFICATE OF SERVICE**
I hereby certify that on 14 July 2006, a copy of the foregoing **DEFENDANT'S SENTENCING MEMORANDUM** was served electronically on David Nesbett, Assistant U.S. Attorney.

s/Allan Beiswenger